**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| ERIKA VERGARA<br><br>Plaintiff,<br><br>v.<br><br>THOMAS KEYES, NEW JERSEY STATE POLICE, STATE OF NEW JERSEY, JOHN DOES (1-10) (FICTITIOUS INDIVIDUALS),<br>ABC OWNER CORPORATIONS (A-Z) (FICTITIOUS CORPORATIONS),<br><br>Defendants. | Case No. 3:20-cv-01460 (BRM)(LHG)<br><br>**OPINION** |

**MARTINOTTI, DISTRICT JUDGE**

Before this Court is a Motion to Dismiss filed by Defendants New Jersey State Police and the State of New Jersey ("Moving Defendants"), seeking to dismiss Plaintiff Erika Vergara's ("Vergara") Complaint (ECF No. 1) pursuant to Federal Rule of Civil Procedure 12(b)(6) (ECF No. 9). Vergara filed an Opposition to the Motion to Dismiss (ECF No. 11) and Moving Defendants filed a Reply Brief to Plaintiff's Opposition to the Motion to Dismiss (ECF No. 15). Having reviewed the submissions filed in connection with the motion and having declined to hold oral argument pursuant to Federal Rule of Civil Procedure 78(b), for the reasons set forth below and for good cause appearing, Moving Defendants' Motion to Dismiss the Complaint is **GRANTED in part** and **DENIED in part.**

I.    BACKGROUND

For the purposes of this Motion to Dismiss, the Court accepts the factual allegations in the Complaint as true and draws all inferences in the light most favorable to the plaintiff. *See Phillips v. Cty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008). The Court also considers any "document *integral to or explicitly relied upon* in the complaint." *In re Burlington Coat Factory Secs. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (quoting *Shaw v. Dig. Equip. Corp.*, 82 F.3d 1194, 1220 (1st Cir. 1996)).

This case arises from the alleged sexual assault of Vergara by Thomas Keyes ("Defendant Keyes"), both employees at the New Jersey State Police ("NJSP") Central Laboratory in Hamilton, New Jersey. (*See generally* Complaint (ECF No. 14).) On January 7, 2005, Vergara was hired by Moving Defendants as a police officer. (*Id.* ¶ 20.) In late October of 2013, she was transferred to the Property Room, where she was assigned the task of DNA and DUI evidence delivery. (*Id.* ¶¶ 21–23.) As part of this job, Vergara delivered and transferred evidence to the NJSP Central Laboratory. (*Id.* ¶ 24.) Two police officers always go together to deliver evidence to the laboratory. (*Id.* ¶ 26.) When Vergara would deliver evidence, she would head to the DNA Unit while her partner, Dignora Aquino ("Aquino"), would go to the Ballistics Unit. (*Id.* ¶ 27.) After completing her DNA delivery, Vergara would meet up with Aquino at the Ballistics Unit. (*Id.* ¶ 28.) Defendant Keyes, a retired Captain in charge of Ballistics DNA, became friends with Aquino. (*Id.* ¶ 29.) Because of Aquino's friendship with Defendant Keyes, Vergara was introduced to Defendant Keyes. (*Id.* ¶ 31.) Vergara witnessed Defendant Keyes make several derogatory comments to Aquino before Defendant Keyes started to assault Vergara. (*Id.* ¶ 32.)

In July 2017, while Vergara was in full uniform delivering evidence to the NJSP Central Laboratory, Defendant Keyes "assaulted and sexually battered" Vergara. (*Id.* ¶ 33.) Vergara was

speaking with Defendant Keyes and Aquino in the parking lot of the NJSP Central Laboratory when Defendant Keyes "forcefully slapped Plaintiff Vergara's buttocks." (*Id.* ¶ 34.) Aquino witnessed Defendant Keyes commit the sexual battery against Vergara. (*Id.* ¶ 36.)

After this incident, on July 25, 2017, Vergara received a text message from an unknown number reading "Wassup Man-al-a-pan?" in reference to Vergara's mispronunciation of Manalapan, which Defendant Keyes heckled her about earlier that day. (*Id.* ¶¶ 38–40.) The text message was from Defendant Keyes, who had obtained Vergara's number by "looking at Plaintiff Vergara's phone when he had asked to see a news video she was watching." (*Id.* ¶ 40.) When Vergara responded to the text several hours later, Defendant Keyes replied "Damn, I don't have 'Booty Calls' get back 2 me that quick, I like that." (*Id.* ¶ 43.) Defendant Keyes continued to send sexually aggressive text messages over the following weeks. (*Id.* ¶ 44.)

In early October 2017, Defendant Keyes sexually battered Vergara in the Ballistics Unit at the NJSP Central Laboratory. (*Id.* ¶¶ 45, 47.) While Vergara was standing against a cubicle, Defendant Keyes approached Vergara from behind and slapped her buttocks. (*Id.* ¶ 46.) On October 10, 2017, Defendant Keyes sent a series of five text messages over the span of 20 minutes, "seeking to have personal interaction with Plaintiff Vergara." (*Id.* ¶ 49.) On October 17, 2017 and October 24, 2017, Defendant Keyes sent messages to Vergara about seeing her at the lab. (*Id.* ¶ 50–51.)

On February 20, 2018, Defendant Keyes committed a third sexual battery against Vergara. (*Id.* ¶ 54.) When Vergara was speaking with a co-worker and handing in DNA evidence at the DNA intake counter, Defendant Keyes approached Vergara from behind and pinched and slapped Vergara's buttocks. (*Id.* ¶¶ 55–57.) After this last incident, Vergara messaged Defendant Keyes and told him she felt "very uncomfortable" when he pinched or slapped her while she was at work

and that she wanted to keep their relationship "strictly professional." (*Id.* ¶ 66.) Defendant Keyes responded: "Understood, all of our interactions will be on a professional basis from now on." (*Id.* ¶ 67.) Vergara told Aquino and her immediate supervisor, Lieutenant Iris Cruz, about the interaction, and Defendant Keyes was then "relieved of his post." (*Id.* ¶¶ 70–72.)

In late May 2019, Vergara began to seek treatment to help her deal with the pain she suffered from the incidents. (*Id.* ¶ 74.) Vergara sees a professional counselor on a weekly basis for treatment in connection with symptoms of Post-Traumatic Stress Disorder and Generalized Anxiety Disorder and started seeing a psychiatrist "once or twice a month" in September 2019. (*Id.*)

On February 12, 2020, Vergara filed a nine-count Complaint against Moving Defendants and Defendant Keyes for: violations of § 1983 (Count I and II); violation of the New Jersey Law Against Discrimination ("NJLAD") (Count III); assault (Count IV); battery (Count V); intentional infliction of emotional distress (Count VI); negligent infliction of emotional distress (Count VII); negligent hiring, supervision, and retention (Count VIII), fictitious parties (Count IX). (ECF No. 1.) Counts I and V are specifically alleged against Defendant Keyes, not Moving Defendants. (*See* ECF No. 1 ¶¶ 76–80; 114–21.)

On April 13, 2020, Moving Defendants filed a Motion to Dismiss six of the nine counts cited in the Complaint. (ECF No. 9.) Specifically, Moving Defendants request the Court dismiss Counts II, III, IV, VI, VII, and VIII. (ECF No. 9-5 at 1.) On June 1, 2020, Vergara filed an Opposition to the Motion to Dismiss. (ECF No. 11.) On June 11, 2020, Vergara filed an Amended Complaint. (ECF No. 14.) On June 29, 2020, Moving Defendants filed their Reply. (ECF No. 15.)

## II.    LEGAL STANDARD

In deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a district court is "required to accept as true all factual allegations in the complaint and draw all inferences in the facts alleged in the light most favorable to the [plaintiff]." *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008). "[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). However, the plaintiff's "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). A court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan*, 478 U.S. at 286. Instead, assuming the factual allegations in the complaint are true, those "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for misconduct alleged." *Id.* This "plausibility standard" requires the complaint allege "more than a sheer possibility that a defendant has acted unlawfully," but it "is not akin to a probability requirement." *Id.* (quoting *Twombly*, 550 U.S. at 556). "Detailed factual allegations" are not required, but "more than an unadorned, the defendant-harmed-me accusation" must be pled; it must include "factual enhancements" and not just conclusory statements or a recitation of the elements of a cause of action. *Id.* (citing *Twombly*, 550 U.S. at 555, 557).

"Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)). However, courts are "not compelled to accept 'unsupported conclusions and unwarranted inferences,'" *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007) (quoting *Schuylkill Energy Res. Inc. v. Pa. Power & Light Co.*, 113 F.3d 405, 417 (3d Cir. 1997)), nor "a legal conclusion couched as a factual allegation." *Papasan*, 478 U.S. at 286.

While, as a general rule, the court may not consider anything beyond the four corners of the complaint on a motion to dismiss pursuant to Rule 12(b)(6), the Third Circuit has held "a court may consider certain narrowly defined types of material without converting the motion to dismiss [to one for summary judgment pursuant to Rule 56]." *In re Rockefeller Ctr. Props. Sec. Litig.*, 184 F.3d 280, 287 (3d Cir. 1999). Specifically, courts may consider any "document *integral to or explicitly relied upon* in the complaint." *In re Burlington Coat Factory*, 114 F.3d at 1426 (quoting *Shaw v. Dig. Equip. Corp.*, 82 F.3d 1194, 1220 (1st Cir. 1996)).

## III. DECISION

The Moving Defendants seek to dismiss six of the nine counts cited in the Complaint. (*See* ECF No. 9-5.) The Court addresses each argument in turn.

### A. 42 U.S.C. § 1983 (Count II)

Vergara brings Count II against Moving Defendants New Jersey State Police and the State of New Jersey. (*See* ECF No. 1 at 14, 16.) Moving Defendants argue Count II should be dismissed because "State Defendants are not persons for the purposes of § 1983." (ECF No. 9-5 at 10.) In

response, Vergara attached an Amended Complaint to her Opposition alleging Count II against "Defendants John Doe 1-10, fictitious individuals, in their personal capacities." (ECF No. 11 at 16; ECF No. 14[1] at 16.) Vergara notes that "as discovery has not yet begun" she "is not in a position to identify the specific individuals responsible for supervision and training of the [NJSP] Central Laboratory employees with respect to sexual harassment and discrimination." (ECF No. 11 at 9–10.) Defendants' Reply did not raise an argument in response to Vergara's amendment to Count II. (*See* ECF No. 15.)

The Supreme Court has held "neither a State nor its officials acting under their official capacities are 'persons' under § 1983." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). Accordingly, "an employee of the state named as a defendant in a civil rights action may be held liable only if that person has personal involvement in the alleged wrongs and is sued in their personal capacity." *Abbott v. Atlantic City*, No. CV 11-4851, 2017 WL 1137441, at *3 (D.N.J. Mar. 27, 2017) (citing *Hafer v. Melo*, 502 U.S. 21, 31 (1991)).[2] Therefore, Vergara can properly amend her complaint to allege Count II against the unnamed NJSP Central Laboratory employees, as the amendment attempts to sue those unnamed employees in their personal capacities. Also, Vergara can use a fictitious party name "at least until reasonable discovery permits the actual defendants to assume their places. However, fictitious names must eventually be dismissed, if discovery yields no identities." *Williams v. New Jersey Div. of State Police*, Civ. A. No. 10-3478, 2012 WL 1900602, at *6 (D.N.J. May 24, 2012) (internal citations omitted). Discovery has not yet started so Vergara's amendment to Count II naming fictitious parties is proper.

---

[1] The Amended Complaint was separately filed on May 11, 2020. (ECF No. 14.)

[2] The Court is not making a determination about whether or not the fictitious parties are personally involved in the alleged wrongs, it is merely noting that state employees, like those working at the NJSP Central Laboratory, can be sued in their personal capacities.

Accordingly, for the reasons stated above, Moving Defendants' Motion to Dismiss Count II is **DENIED**.

## B. NJLAD (Count III)

Moving Defendants contend Vergara's NJLAD claim must be dismissed because Vergara "was not an employee of State Defendants." (ECF No. 9-5 at 2.) They further argue Vergara "is an employee of the Jersey City Police Department, not the State of New Jersey or the New Jersey State Police" and "State Defendants have no ability to control Plaintiff's day to day activities, cannot hire, fire, or determine compensation for Plaintiff, and State Defendants certainly did not intend to create an employment type relationship with every police officer, across the entire state, that simply enters the lab." (*Id.* at 8–9.) Vergara notes her Amended Complaint "clarifies that [she] does not seek the protection of NJLAD under a de facto employment theory, but rather under a theory of discrimination in a place of public accommodation." (ECF No. 11 at 9.) The NJLAD provides:

> All persons shall have the opportunity to obtain . . . all the accommodations, advantages, facilities, and privileges of any place of public accommodation . . . without discrimination because of race, creed, color, national origin, ancestry, age, marital status, affectional or sexual orientation, familial status, disability, national origin, sex, gender identity or expression[.] This opportunity is recognized as and declared to be a civil right.

N.J. Stat. Ann. § 10:5-4. To state a claim under the public accommodation theory of the NJLAD, a plaintiff must allege "(1) defendant operates a place of public accommodation, (2) the plaintiff is a member of a protected class, and (3) he or she was denied equal treatment on the basis of his or her membership in a protected class." *Vandeusen v. Mabel Realty of Bordentown, LLC*, No. 12-0330, 2012 WL 1664116, at *3 (D.N.J. May 11, 2012) (citing N.J. Stat. Ann. § 10:5–12(f); *Dasrath v. Continental Airlines, Inc.*, 2006 WL 372980 (D.N.J. Feb. 16, 2006)). While the

NJLAD does not specifically list sexual harassment as a form of discrimination, "it is well-established that sexual harassment is a form of sex discrimination that violates both Title VII and the [NJLAD]." *J.T.'s Tire Service, Inc. v. United Rentals North America, Inc*., 985 A.2d 211, 215 (N.J. Super. Ct. App. Div. 2010).

In support of her allegation that Moving Defendants operate a place of public accommodation, Vergara cites *Ptaszynski v. Uwaneme*, 853 A.2d 288, 297 (N.J. Super. Ct. App. Div. 2004) to argue "New Jersey courts have held that law enforcement agencies are public accommodations subject to NJLAD" (*id.* at 8–9) and *Thomas v. County of Camden*, 902 A.2d 327, 333–34 (N.J. Super. Ct. App. Div. 2006) to assert that "secure government facilities" like the police laboratory at issue here "have been regarded as places of public accommodation for the purposes of NJLAD." (*Id.* at 9.) In their Reply, Moving Defendants contend the NJSP Central Laboratory is not a place of public accommodation under the NJLAD. (ECF No. 15 at 1.) Moving Defendants cite *Doe v. Division of Youth & Family Services*, 148 F. Supp. 2d 462, 496 (D.N.J. 2001) and *Lasche v. New Jersey*, 2019 WL 4727922 (D.N.J. Sept. 26, 2019) to argue federal district courts are not bound by the state court decisions cited by Vergara, and conclude "the lab is not a place of public accommodation." (ECF No. 15 at 2.) The Court will briefly discuss each of the cases referenced by the parties.

In *Doe*, the court had to determine whether the Division of Youth and Family Services (DYFS) constituted a place of public accommodation under NJLAD. 148 F. Supp. 2d. at 496. The court noted that the non-exhaustive list of entities under the NJLAD included "taverns, hotels, summer camps, retail shops, garages, bathhouses, music halls, pool halls, libraries, and schools" but not one entity that "remotely resemble[d] DYFS or any other State agency." *Id.* It also observed "even when applying the tests employed by New Jersey courts to determine whether an unlisted

entity is considered a place of public accommodation under NJLAD, DYFS does not fall within the statutory definition" since DYFS does not "engage in 'broad solicitation' in an effort to attract the public to its organization." *Id.* (quoting *Dale v. Boy Scouts of America*, 734 A.2d at 1196, 1210 (N.J. 1999), *rev'd on other grounds*, 530 U.S. 640 (2000)). Ultimately, the court concluded DYFS was not a place of public accommodation. *See id.*

Three years later, the New Jersey Appellate Division addressed the issue of whether a municipal police department was a place of public accommodation under the NJLAD in *Ptaszynski v. Uwaneme*. As in *Doe*, the municipal police department at issue in *Ptaszynski* was not a listed entity under the NJLAD. *See* N.J. Stat. Ann. § 10:5-5. Like the *Doe* court, the *Ptaszynski* court cited *Dale* for the tests that New Jersey courts use to decide whether non-listed entities are public accommodations. *Ptaszynski*, 853 A.2d at 296. However, the *Ptaszynski* court included more of the queries listed by the *Dale* court than the *Doe* court did, noting that courts look at "whether the entity before us engages in broad public solicitation, whether it maintains close relationships with the government or other public accommodations, or whether it is similar to enumerated or other previously recognized public accommodations." *Id.* at 297 (citing *Dale*, 734 A.2d at 1210). After stating "[a] police department is not a private entity that needs to be shoe-horned into a list of other, primarily private, entities that provide services to the public" the court concluded "not just a municipal police force, but any State governmental agency is a place of public accommodation for purposes" of the NJLAD. *Id.*

In *Thomas v. County of Camden*, the court had to determine whether the Camden County Communications Center (CCCC) constituted a place of public accommodation under the NJLAD. 902 A.2d 327. The court noted "the CCCC is a division of the Department of Public Safety, an executive unit of county government" that functions as "a dispatch agency for police, fire and

emergency medical services." *Id.* at 333. Similar to *Ptaszynski*, the court observed "we are not required to analyze the extent of public solicitation or the closeness of the relationship with government simply because the Camden defendants are public entities and, by their very nature, constitute a place of public accommodation." *Id.* at 332. The *Thomas* court made this finding despite the CCCC being "locked down 24 hours per day, 7 days per week." *Id.* at 333.

Lastly, in *Lasche*, the court had to determine whether the DCPP constituted a place of public accommodation under the NJLAD. 2019 WL 4727922, at *15. The court emphasized "there is no indication that the New Jersey Legislature intended NJLAD to extend to governmental entities such as the DCPP." *Id.* at *17. Importantly, the court observed "the DCPP inarguably plays a different role in the governmental regime than entities which provide essential public services, such as police departments or public schools." *Id.* Following prior decisions in the district that have analyzed entities under the NJLAD in the context of child protective services, the court concluded "the DCPP does not constitute a place of public accommodation" under the NJLAD. *Id.* (citing *Doe*, 148 F. Supp. 2d at 496; also citing *K.J. ex rel. Lowry v. Div. of Youth & Family Servs.*, 363 F. Supp. 2d 728, 750 (D.N.J. 2005) (finding DYFS is not a place of public accommodation)).

For the reasons set forth below, the Court finds the NJSP Central Laboratory is a public accommodation for the purposes of the NJLAD. As a preliminary matter, the NJSP Central Laboratory is not a listed entity under the NJLAD. *See* N.J. Stat. Ann. § 10:5-5. Because the laboratory is not a listed entity, the Court must use the tests previously employed by New Jersey courts in determining whether a non-listed entity qualifies as a public accommodation under the NJLAD. *See Doe*, 148 F. Supp. 2d. at 496; *see also Ptaszynski*, 853 A.2d at 296. The Court must ask "whether the entity engages in broad public solicitation, maintains close relationships with the

government or other public accommodations, or whether it is similar to enumerated or other previously recognized public accommodations." *Dale*, 734 A.2d at 1210. When the entity at issue is a public entity, like a municipal police department, courts have found that those entities "by their very nature, constitute place[s] of public accommodation." *Thomas*, 902 A.2d at 332. Here, the NJSP Central Laboratory, like a municipal police department or a police dispatch center, is a public entity and "by [its] very nature" is a public accommodation under the NJLAD. *See Thomas*, 902 A.2d at 333; *see also Ptaszynski*, 853 A.2d at 297. The Court is willing to make this finding despite the laboratory being tightly secured and only open to a few officers at a time (ECF No. 14 at ¶¶ 25–26), similar to how the *Thomas* court found the CCCC was a public accommodation despite being "locked down 24 hours per day, 7 days per week." 902 A.2d at 333.[3]

The Court is unpersuaded by Moving Defendants' reliance on *Doe* and *Lasche* in their Reply. (*See* ECF No. 15.) The entities at issue in *Doe* and *Lasche* are different from the entity at issue in this matter. While the court in *Doe* analyzed whether DYFS was a place of public accommodation, the court in *Lasche* determined whether the DCPP was a place of public accommodation. As Moving Defendants have partially pointed out, the DCPP—and presumably DYFS as well—was not found to be a place of public accommodation because "it plays a different role in the governmental regime than entities which provide *essential public services, such as police departments*" as it "does not provide general services to the public at large, nor does it engage in 'broad public solicitation.'" *Lasche*, 2019 WL 4727922, at *17 (emphasis added). So

---

[3] This Court is only holding, as the *Ptaszynski* court did, that Vergara's claim may proceed beyond the dismissal stage. *See Jobes v. Moorestown Twp.*, Civ. A. No. 03-4016, 2006 WL 3000444, at *11 (D.N.J. Oct. 19, 2006) (discussing the Appellate Division's decision in *Ptaszynski* and noting the opinion "narrowly reversed the trial court's ruling, holding that only as a matter of law, an [NJLAD] claim against the police department may proceed beyond dismissal stage because the police department is considered a place of public accommodation").

despite noting it was not bound by the Appellate Court decisions in *Thomas* and *Ptaszynski*, the court in *Lasche* still recognized the distinction between entities like the DCPP and DYFS, which have not been considered public accommodations under the NJLAD, and entities like police departments, which have been found to be public accommodations under the NJLAD. *See id.*; *see also K.J. ex rel. Lowry*, 363 F. Supp. 2d at 750 (finding DYFS was not a place of public accommodation since "place of public accommodation . . . refers to facilities maintained for the use of general public" not simply "services provided by a state agency"). Therefore, Vergara has properly alleged that Moving Defendants operate a place of public accommodation, satisfying the first element of her claim.

Vergara also properly alleges the second and third elements of her public accommodation gender discrimination claim. She sufficiently alleges she is a part of a protected class and references that she is a woman. (ECF No. 1; ECF No. 14); *see* N.J. Stat. Ann. § 10:5-12(f)(1) (prohibiting an "employee of any place of public accommodation . . . to discriminate against any person . . . on account of the . . . gender identity" of any person); *see also Vandeusen*, 2012 WL 1664116, at *3 (finding Plaintiff met second element of public accommodation claim "through her statements that she is disabled and uses a wheelchair"). And she alleges she was denied equal treatment because of her gender. (*See* ECF No. 14 ¶¶ 99–100; *see also* ECF No. 1 ¶¶ 98–99.)

Accordingly, for the reasons set forth above, Moving Defendants' Motion to Dismiss Count III is **DENIED**.

### C. Assault (Count IV)

Vergara brings a state law claim against Defendants for common law assault and intentional infliction of emotional distress. (ECF No. 14 at ¶¶ 104–14; 123–30.) Moving Defendants argue Vergara's claims should be dismissed because the claims arise from intentional

torts by Defendant Keyes, and N.J. Stat. Ann. § 59:2-10 provides public entities with immunity for intentional misconduct. (ECF No. 9-5 at 10–11.) Vergara argues that "L. 2019, c. 120, § 7 abrogates the limitation on public entity liability . . . because the new law expressly imposes liability for injuries resulting from the commission of certain crimes," like criminal sexual contact under N.J. Stat. Ann. § 2C:14-3(b). (ECF No. 11 at 10.) In their Reply, Moving Defendants argue Vergara's reliance on L. 2019, c. 120, § 7 is inapplicable since Vergara "was an adult during the relevant time period" and the law was meant to apply to the sexual abuse of a child. (ECF No. 15 at 2–3.)

Both laws—L. 2019, c. 120 and L. 2019, c. 239—amended N.J. Stat. Ann. § 59:2-1.3, which states:

> Notwithstanding any provision of the "New Jersey Tort Claims Act" . . . immunity from civil liability granted by that act to a public entity or public employee shall not apply to an action at law for damages as a result of a sexual assault, any other crime of a sexual nature, a prohibited sexual act as defined in section 2 of P.L. 1992, c. 7 (C.2A:30B-2), or sexual abuse as defined in section 1 of P.L. 1992, c. 109 (C.2A:61B-1) being committed against a person, which was caused by a willful, wanton or grossly negligent act of the public entity or public employee

N.J. Stat. Ann. § 59:2-1.3(a)(1). Moving Defendants also argue the bill Vergara cites only pertains to actions brought by children by citing to the Statement to Senate Bill No. 477 which provides "public entities would be liable in actions for damages alleging the sexual abuse of a child." (ECF No. 15 at 3.) However, the statement cited by Moving Defendants relates to the text of the bill as introduced, not as amended and passed in its final form, which did not happen until June 17, 2019, when L. 2019, c. 239 amended N.J. Stat. Ann § 59:2-1.3 a second time.

On June 17, 2019, the Assembly Budget Committee issued a statement regarding L. 2019, c. 239, which specified that L. 2019, c. 120

> creates new, extended statute of limitations periods for civil actions

> by child and adult victims of sexual abuse (child victim-suit must be filed by the 55th birthday, or within seven years of discovering the injury, whichever date is later; adult victim-suit must be filed within seven years of discovering the injury).

Assembly Budget Committee, New Jersey Committee Report, 2018 N.J. A.B. 5392 (June 17, 2019). Therefore, the statute is not limited to claims by children alleging sexual abuse. *See* N.J. Stat. Ann. § 59:2-1.3(a)(1). Under the statute, adult plaintiffs can bring claims against public employees or public entities for "sexual assault, any other crime of a sexual nature, a prohibited sexual act[4] as defined in N.J. Stat. Ann. § 2A:30B-2, or sexual abuse[5] as defined in N.J. Stat. Ann.§ 2A:61B-1" if those actions were "caused by a willful, wanton or grossly negligent act of the public entity or public employee." N.J. Stat. Ann. § 59:2-1.3(a)(1). While "prohibited sexual act" and "sexual abuse" are defined to apply only to children, "sexual assault" and "any other crime of a sexual" are not, which means adults can bring claims under this statute. Therefore, both the statute's terms and the Assembly Budget Committee's statement clarify that N.J. Stat. Ann. § 59:2-1.3 does not exclusively apply to children. (ECF No. 15 at 3.) Therefore, Moving Defendants' immunity may be abrogated by N.J. Stat. Ann. § 59:2-1.3. Next, the Court will consider whether Vergara properly stated a claim for assault.

Under New Jersey law, to establish liability for assault, a plaintiff must demonstrate that the defendant "act[ed] intending to cause a harmful or offensive contact with the [plaintiff's person] . . . or a third person, or an imminent apprehension of such a contact, and the [plaintiff] is

---

[4] The prohibited sexual acts in this section refer to acts with children, and include (1) sexual intercourse, (2) anal intercourse, (3) masturbation, (4) bestiality, (5) sadism, (6) masochism, (7) fellatio, (8) cunnilingus, and (9) nudity "if depicted for the purpose of sexual stimulation or gratification of any person who may view the depiction." N.J. Stat. Ann. § 2A:30B-2.

[5] "Sexual abuse" means an act of sexual contact or sexual penetration between a child under the age of 18 years and an adult. N.J. Stat. Ann. § 2A:61B-1(a)(1).

thereby put in such imminent apprehension." *Leang v. Jersey City Bd. of Educ.*, 969 A.2d 1097, 1117 (N.J. 2009). Here, Vergara alleges "[a]ll defendants acted with the purposeful, knowing, reckless, negligent intent to cause harm to [Vergara] and thereby put her in imminent apprehension and fear for her well-being." (ECF No. 1 ¶ 107.) Defendant Keyes sexually battered Vergara at least three times at the NJSP Central Laboratory and sent her a series of sexually suggestive text messages. (ECF No. 1 ¶¶ 33–40; 45–47; 49–51; 54–57.) After these incidents, Vergara started to avoid certain parts of the laboratory where Defendant Keyes worked, because "Vergara knew that Defendant Keyes wasn't going to stop." (ECF No. 1 ¶¶ 61, 64.) Vergara has pled facts indicating Defendant Keyes assaulted her, therefore, she has sufficiently stated a claim for assault.

Moving Defendants argue Vergara's claim should be dismissed because "State Defendants are not liable for [] intentional torts" since "N.J.S.A. § 59:2-10 gives public entities immunity for intentional misconduct." (ECF No. 9-5 at 10.) N.J. Stat. Ann. § 59:2-10 states "[a] public entity is not liable for the acts or omissions of a public employee constituting a crime, actual fraud, actual malice or willful misconduct." N.J. Stat. Ann. § 59:2-10. However, N.J. Stat. Ann. § 59:2-10 is part of the New Jersey Tort Claims Act. *See* N.J. Stat. Ann. § 59:1-1 *et seq*. As provided above, N.J. Stat. Ann. § 59:2-1.3 applies to abrogate immunity for public entities for claims arising from sexual assault or "any other crime of a sexual nature" if caused by the "willful, wanton or grossly negligent" act of a public employee. N.J. Stat. Ann. § 59:2-1.3(a)(1). Vergara argues Defendant Keyes committed the crime of criminal sexual contact, which requires abrogation of immunity under N.J. Stat. Ann. § 59:2-1.3. (*See* ECF No. 11 at 10–11.) Criminal sexual contact is "an intentional touching by the victim or actor, either directly or through clothing, of the victim's or actor's intimate parts for the purpose of degrading or humiliating the victim or sexually arousing or sexually gratifying the actor." *See* N.J. Stat. Ann. § 2C:14-3(b); N.J. Stat. Ann. § 2C:14-2(c)(1).

Neither Vergara's Complaint nor her Amended Complaint mentions the crime of criminal sexual contact. (*See* ECF No. 1; ECF No. 14.) Vergara first references the crime in her Opposition, where she points to two paragraphs of her Complaint, paragraph 57 and 59, to argue she alleged "sufficient facts to constitute the crime of criminal sexual contact." (*See* ECF No. 11 at 10.) Paragraph 57 alleges "Defendant Keyes approached Plaintiff Vergara from behind and pinched and slapped Plaintiff Vergara's buttocks while she was at the DNA intake counter at the NJSP Central Laboratory in Hamilton, New Jersey." (ECF No. 1 ¶ 57.) Paragraph 59 alleges "after this incident, Lauren Perdue described Defendant Keyes as having his tongue out, excitedly looking Plaintiff up and down as he approached, like a dog salivating after a bone." (*Id.* ¶ 59.) Vergara cannot amend her pleadings by raising new arguments in her brief. *Com. of Pa. ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988) ("It is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss") (internal citations omitted). Because Vergara has not properly alleged sufficient facts to constitute criminal sexual contact, N.J. Stat. Ann. § 59:2-1.3 does not apply and Moving Defendants' immunity as a public entity is not abrogated.

Accordingly, Moving Defendants' Motion to Dismiss Count IV is **GRANTED and DISMISSED WITHOUT PREJUDICE.**

### D.  Emotional Distress Claims (Count VI and VII)

#### 1. Intentional Infliction of Emotional Distress (Count VI)[6]

Vergara also brings a state law claim for Intentional Infliction of Emotional Distress. (ECF No. 14 at ¶¶ 123–30.) Moving Defendants argue they are not liable for Defendant Keyes' torts

---

[6] Vergara's Complaint and Amended Complaint are identical on this Count, so the Court will reference Vergara's Amended Complaint. (*See* ECF No. 14.)

under N.J. Stat. Ann. § 59:2-10. (ECF No. 9-5 at 10.) Vergara contends, just like she did in her assault claim, that N.J. Stat. Ann. § 59:2-1.3 abrogates the immunity relied on by Moving Defendants. (*See* ECF No. 11 at 10.) The Court disagrees.

Under New Jersey law, to establish a *prima facie* claim for intentional infliction of emotional distress, a plaintiff must show: "(1) that the defendant intended to cause emotional distress; (2) that the conduct was extreme and outrageous; (3) that the actions proximately caused emotional distress; and (4) that plaintiff's emotional distress was severe." *Witherspoon v. Rent–A–Center, Inc.*, 173 F. Supp. 2d 239, 242 (D.N.J. 2001) (citing *Buckley v. Trenton Savs. Fund Soc'y*, 544 A.2d 857 (N.J. 1988)). "An intentional infliction of emotional distress claim is rarely dismissed on a motion to dismiss." *Acevedo v. Monsignor Donovan High Sch.*, 420 F. Supp. 2d 337, 349 (D.N.J. 2006). However, a plaintiff will not satisfy the above elements by merely demonstrating a defendant acted "unjust, unfair and unkind." *Fregara v. Jet Aviation Bus. Jets*, 764 F. Supp. 940, 956 (D.N.J. 1991). In order to establish "extreme and outrageous" conduct, a plaintiff must sufficiently plead factual allegations to show the defendant's conduct was "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Witherspoon*, 173 F. Supp. 2d at 242 (quoting *Buckley*, 544 A.2d at 863 (citation omitted)). As a threshold matter, the Court must determine whether a defendant's conduct meets this standard. *See Ali v. Jersey City Parking Authority*, No. 13–2678, 2014 WL 1494578, at *5 (D.N.J. Apr. 16, 2014) (citing *Cox v. Keystone Carbon Co.*, 861 F.2d 390, 395 (3d Cir. 1988)). In order to establish severe emotional distress, a plaintiff must show emotional distress "so severe that no reasonable [person] could be expected to endure it." *Glenside West Corp. v. Exxon Co.*, 761 F. Supp. 1100, 1113 (D.N.J. 1991) (quoting *Buckley*, 544 A.2d at 864). Additionally, "New Jersey law [] requires plaintiffs to assert

that they sought treatment for their alleged distress." *Botts v. N.Y. Times Co.*, No. 03–1582, 2003 WL 23162315, at *9 (D.N.J. Aug. 29, 2003).

Accepting as true all of Vergara's allegations and construing the facts in the light most favorable to Vergara, the Court finds she has not stated a claim for intentional infliction of emotional distress.

Vergara has alleged no facts indicating the Moving Defendants—New Jersey State Police and the State of New Jersey—engaged in conduct that could be characterized as extreme and outrageous. The "elevated threshold" for finding outrageous conduct is only satisfied in extreme cases under New Jersey law. *Griffin v. Tops Appliance City, Inc.*, 766 A.2d 292, 296 (N.J. Super. Ct. App. Div. 2001). Vergara alleges "Defendant Keyes used his position . . . to sexually harass and engage in unlawful contact" with Vergara without her consent, "which included the humiliating acts set forth in the previous Counts of this Complaint, all for the sexual gratification of Defendant Keyes." (ECF No. 14 ¶¶ 125–26.) The Complaint as a whole specifies that Defendant Keyes sexually harassed Vergara, but Vergara does not allege how Moving Defendants engaged in intentional or outrageous conduct. (*See* ECF No. 1 ¶ 126.)

Vergara also alleges "Defendants acted either intentionally or recklessly and knew or should have known that the inappropriate sexual touching and other misconduct in their relationships with [Vergara] would result in serious emotional distress." (*Id.* ¶ 128.) Merely stating that Defendants acted intentionally or recklessly without supporting facts does not "allow[] the court to draw the reasonable inference that the defendant is liable for misconduct alleged." *Ashcroft*, 556 U.S. at 678.

For reference, in *Lockhart v. Willingboro High School*, a 17-year-old student alleged she had been sexually assaulted by another student inside an empty classroom while school was in

session. 170 F. Supp. 3d at 727. With regard to a teacher and assistant principal who had been sued by the victim for their failure to prevent this from happening, the court found that there were no facts that could support an inference of "intentional and outrageous conduct." *Id.* at 738–39; *see A.B. for C.D. v. Vineland Bd. of Educ.*, No. 17-11509, 2018 WL 3141831, at \*8 (D.N.J. June 27, 2018). Similarly, nothing in the Complaint indicates the Moving Defendants recklessly allowed or intended for any of this to happen to Vergara. The Court finds Vergara has failed to state a claim for intentional infliction of emotional distress.

Accordingly, for the reasons stated above, Moving Defendants' Motion to Dismiss Count VI is **GRANTED and DISMISSED WITHOUT PREJUDICE.**

### 2. Negligent Infliction of Emotional Distress (Count VII)

Moving Defendants argue Vergara's claim for negligent infliction of emotional distress should be dismissed because Vergara "has not met the medical threshold for recovery." (ECF No. 9-5 at 12.) Moving Defendants rely on N.J. Stat. Ann. § 59:9-2, which provides claims for pain and suffering against public entities or public employees are prohibited unless there is "permanent loss of a bodily function, permanent disfigurement or dismemberment." N.J. Stat. Ann. § 59:9-2(d). Vergara argues that N.J. Stat. Ann. § 59:2-1.3 "renders the medical threshold inapplicable" and that her Amended Complaint reflects Vergara was suffering from PTSD symptoms to argue that "the limitation on liability contained in N.J. Stat. Ann. § 59:9-2(d) [does] not apply." (ECF No. 11 at 11–12.) The Court disagrees.

Under New Jersey law, there are two legal theories under which a plaintiff can establish a *prima facie* claim for negligent infliction of emotional distress. First, a plaintiff can show: 1) "death or serious physical injury of another caused by defendant's negligence; 2) a marital or intimate family relationship between plaintiff and the injured person; 3) observation of the death or injury

at the scene of the accident; and 4) resulting severe emotional distress." *Fleming v. United Parcel Serv., Inc.*, 604 A.2d 657, 686 (N.J. Super Ct. Law. Div. 1992). Second, a plaintiff can show "the defendant's negligent conduct placed the plaintiff in 'reasonable fear of immediate personal injury' which gave rise to emotional distress that resulted in a substantial bodily injury or sickness." *Jablonowska v. Suther*, 948 A.2d 610, 617 (N.J. 2008). Under the second standard, New Jersey law has adopted the "zone of danger" rule, where "immediate fear of personal injury could serve as the basis for recovery so long as 'substantial bodily injury or sickness' result." *Abouzaid v. Mansard Gardens Ass'n, LLC*, 23 A.2d 338, 344 (N.J. 2011).

Vergara does not sufficiently state a claim for negligent infliction of emotional distress under either standard. Vergara does allege she suffered "severe emotional distress" from Defendant Keyes' conduct, but does not allege she observed the death of a close family member as required under the first theory of negligent infliction of emotional distress. *See Fleming*, 604 A.2d at 686. Furthermore, Vergara alleges she suffered from PTSD symptoms and general anxiety disorder due to Defendant Keyes' assault, which is not "substantial bodily injury or sickness." *Abouzaid*, 23 A.2d at 344.

Accordingly, for the reasons stated above, Moving Defendants' Motion to Dismiss Count VII is **GRANTED and DISMISSED WITHOUT PREJUDICE.**

### E.  Negligent Hiring, Supervision, and Retention (Count VIII)

Moving Defendants contend Vergara cannot state a claim for negligent hiring, negligent supervision, or negligent retention because, as Moving Defendants argued above, Vergara "has not met the medical threshold for recovery." (ECF No. 9-5 at 12.) Vergara's opposition is identical as well—she argues that N.J. Stat. Ann. § 59:2-1.3 renders the threshold in N.J. Stat. Ann. § 59:9-2(d) inapplicable. (*See* ECF No. 11 at 11–12.) The Court disagrees.

To be found liable for negligent hiring or supervision, a plaintiff must show: (1) "the employer knew or had reason to know of the particular unfitness, incompetence or dangerous attributes of the employee and could reasonably have foreseen that such qualities created a risk of harm to other persons" and (2) the employer's negligence in hiring or supervising the employee resulted in the dangerous attribute proximately causing plaintiff's injury. *G.A.-H. v. K.G.G.*, 210 A.3d 907, 916 (N.J. 2019) (quoting *Di Cosala v. Kay*, 450 A.2d 508, 516 (1982)). "To be found liable for negligent supervision or training, the plaintiff must satisfy what is essentially the same standard, but framed in terms of supervision or training." *Id.*

There are no facts alleged in the Complaint to support a claim that any of the Moving Defendants knew or should have known that Defendant Keyes was unfit or dangerous prior to the allegations underlying Vergara's present suit. (*See* ECF No. 14 ¶¶ 139–66.) Vergara alleges "Defendants . . . at the time of hiring employee, Defendant Keyes, had reason to believe, or could have determined by reasonable investigation, that the employee was dangerous and/or ill-equipped to perform his duties and hired him anyway." (*Id.* ¶ 143.) This conclusory statement does not provide the Court with a particularized unfitness or attribute of Defendant Keyes. *Schuler v. Monmouth Cty. Vocational Sch. Dist.*, No. 319-CV-00025, 2020 WL 1809676, at *6 (D.N.J. Jan. 9, 2020) (finding that conclusory statements will not satisfy a claim for negligent hiring and supervision).

Accordingly, for the reasons stated above, Moving Defendants' Motion to Dismiss Count VIII is **GRANTED and DISMISSED WITHOUT PREJUDICE.**

**IV.    CONCLUSION**

For the reasons set forth above, Moving Defendants' Motion to Dismiss (ECF No. 9-5) is

**GRANTED in part** and **DENIED in part**. Specifically, Moving Defendants' Motion to Dismiss

Counts II and III is **DENIED** and Moving Defendants' Motion to Dismiss Counts IV, VI, VII, and

VIII is **GRANTED** and **DISMISSED WITHOUT PREJUDICE**. Plaintiff is afforded thirty (30)

days to file an amended complaint that cures the deficiencies as set forth above. Failure to file an

amended complaint within this time will result in the entire case being dismissed with prejudice.

An appropriate order follows.


**Date: December 30, 2020**                    */s/ Brian R. Martinotti*
                                              **HON. BRIAN R. MARTINOTTI**
                                              **UNITED STATES DISTRICT JUDGE**